UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

№ 22-CV-1935 (ENV) (RER)

———————————

THE ANNUITY, WELFARE AND APPRENTICESHIP SKILL IMPROVEMENT & SAFETY FUNDS OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 15, 15A, 15C & 15D, AFL-CIO, *ET AL*.

VERSUS

TRAC CONSTRUCTION GROUP, INC.

———————————

**REPORT & RECOMMENDATION**

October 4, 2022

———————————

TO THE HONORABLE ERIC N. VITALIANO
SENIOR UNITED STATES DISTRICT JUDGE

**RAMON E. REYES, JR., U.S.M.J.:**

The Annuity, Welfare and Apprenticeship Skill Improvement & Safety Funds of the International Union of Operating Engineers, Local 15, 15A, 15C & 15D, AFL-CIO (the "Funds"), by their Trustees James T. Callahan, Thomas A. Callahan, Michael Salgo and William Tyson, the Central Pension Fund of the International Union of Operating Engineers ("CPF"), by its Chief Executive Officer Michael A. Crabtree, and the International Union of Operating Engineers Local 15, 15A, 15C, & 15 D, AFL-CIO ("Local 15" or the "Union"), by its President and Business Manager Thomas A. Callahan, (collectively, "Plaintiffs") bring this action against Trac Construction Group, Inc. ("Trac" or "Defendant"), to enforce provisions of the Employee Retirement Income Security Act of 1974 ("ERISA") and a collective bargaining agreement under the Labor-Management Relations Act of 1947 ("LMRA"). (ECF No. 1 ("Compl.")).

1

Following proper service of the Complaint (ECF No. 5), and Defendant's failure to answer or appear, Plaintiffs requested that the Clerk of the Court enter default on May 31, 2022. (ECF No. 6). The Clerk of the Court entered default on June 17, 2022 (ECF No. 7), and Plaintiffs moved for a default judgment on June 21, 2022 (ECF No. 8). Your Honor referred the Motion to me for a Report and Recommendation the following day. (Order dated 06/22/2022).

After carefully reviewing the record, for the reasons set forth herein, I respectfully recommend that Plaintiffs' Motion for Default Judgment be granted.

## BACKGROUND

The facts below are derived primarily from Plaintiffs' Complaint and are accepted as true for the purposes of liability.

Local 15 is a labor organization as defined in Section 2 of the LMRA. (Compl. ¶ 13). The Funds and CPF are "multi-employer/employee benefit plans" within the meaning of ERISA, are "joint trustee funds" under the LMRA, and were established to provide certain retirement income and employee welfare benefits to eligible plan participants. (Compl. ¶¶ 4, 6–9, 11–12). The Trustees of the Funds and the Chief Executive Officer of CPF are "fiduciaries" within the meaning of ERISA. (Compl. ¶¶ 5, 10). Trac is a construction company licensed to do business in the state of New York, with a principal place of business in Brooklyn, New York, and is an employer within the meaning of ERISA and the LMRA. (*Id*. ¶¶ 15–18).

At all relevant times, Local 15 and Trac were parties to a collective bargaining agreement ("CBA"). (Compl. ¶ 19; *see also* ECF No. 10-2 ("Local 15/Trac Agreement")). Under the CBA, Trac agreed to be bound to a series of association collective bargaining agreements negotiated by Local 15 with the General Contractors Association of New York, Inc. (*See* ECF No. 10-3 ("Local 15/GCA CBA"); ECF No. 10-4 ("Local 15/GCA CBA II")), and to the Agreements and

Declarations of Trust ("Trust Agreements") governing each Fund. (Compl. ¶ 24; ECF Nos. 10-5 through 10-8 ("Exs. D–G")). Pursuant to those agreements, Trac was obligated: (1) to remit certain benefit contributions to the Funds and CPF; (2) to remit union dues and political action committee payments to Local 15 at specified rates based on work performed by covered employees; and (3) to make its books and records available to the Plaintiffs to ensure that the proper amounts had been remitted. (Compl. ¶¶ 20–22).

Plaintiffs allege that Trac "may have underreported the number of employees, the amount of employee hours[,] and wages paid to its employees," which in turn may have resulted in the underreporting of the remittances due to Plaintiffs. (*Id.* ¶ 29). Plaintiffs claim that they formally requested Trac's books and records to conduct an audit, but Trac refused to produce them as required by the CBA. (*Id.* ¶ 30). Accordingly, Plaintiffs allege that Trac has violated ERISA and the CBA by failing to pay contributions, union dues, and other required payments totaling approximately $100,000 for the period July 1, 2017 through March 31, 2022, and seek an order requiring that Trac submit to an audit as required by the CBA to confirm the amount owed. (*Id.* ¶¶ 23–40).

Plaintiffs commenced this action on April 5, 2022. (Compl.). Trac was properly served via the Secretary of State on May 3, 2022 (ECF No. 5), but failed to answer or otherwise respond. Plaintiffs therefore requested that the Clerk of the Court enter a notation of default on May 31, 2022 (ECF No. 6), which was subsequently entered on June 17, 2022 (ECF No. 7). Plaintiffs then filed the instant Motion for Default Judgment, seeking an order directing Trac to cooperate with an audit of its books and records and an award of attorney's fees and costs. (ECF No. 8 ("Pl's Mot.")). In support of the Motion, Plaintiffs filed a statement of damages (ECF No. 8-1); a proposed order (ECF No. 8-2); the affidavit of the Funds Administrator, Catherine Chase (ECF

3

No. 9 ("Chase Aff.")); its counsel's affidavit and accompanying exhibits (ECF No. 10 ("Steinberg Aff.")); and a Memorandum of Law (ECF No. 11 ("Pl's Mem.")). Your Honor referred the Motion to me for a Report and Recommendation. (Order dated 06/22/2022).

## **STANDARD OF REVIEW**

Rule 55 establishes a two-step process for a plaintiff to obtain a default judgment. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed R. Civ. P. 55(a). A plaintiff may then move for a default judgment against the defaulting defendant. Fed. R. Civ. P. 55(b)(2). "A default judgment is ordinarily justified where a defendant fails to respond to the complaint." *J & J Sports Prods., Inc. v. Ahuachapan Corp.*, 422 F. Supp. 3d 652, 662 (E.D.N.Y. 2019) (quoting *SEC v. Anticevic*, No. 05-CV-6991 (KMW), 2009 WL 4250508, at *2 (S.D.N.Y. Nov. 30, 2009)); *see also Bricklayers Ins. & Welfare Fund v. David & Allen Contracting, Inc.*, No. 05 CV 4778 (SJ) (VVP), 2007 WL 3046359, at *2 (E.D.N.Y. Oct. 16, 2007) (citing *Bermudez v. Reid*, 733 F.2d 18, 21 (2d Cir.1984)) ("In civil actions, when a party fails to appear after given notice, the court normally has justification for entering default.").

Before entering a default judgment, a court must first determine whether the allegations of the complaint establish the defaulting party's liability on each cause of action as a matter of law. *City of New York v. Mickalis Pawn Shop, LLC,* 645 F.3d 114, 137 (2d Cir. 2011). In making that determination, a court must accept the well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d. Cir. 2009) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). If the unchallenged facts establish defendant's liability as a matter of law, the Court then determines the amount of damages due. *Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)

4

(citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 108, 111 (2d Cir. 1997)).

## DISCUSSION

I. <u>Defendant's Liability Under ERISA and the LMRA</u>

Section 515 of ERISA provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. Accordingly, under Section 1145, an employer that fails to make contributions pursuant to the terms of a collective bargaining agreement violates ERISA. Further, Section 301 of the LMRA provides federal jurisdiction for suits involving the "violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a).

"At the pleading stage, allegations in a complaint that an employer failed to remit contributions to an ERISA plan are sufficient to establish the employer's liability under ERISA." *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Engineers, Loc. 15, 15A, 15C & 15D, AFL-CIO v. Rizzo Env't Servs. Corp.*, No. 22-CV-556 (NGG) (LB), 2022 WL 1460585, at *3 (E.D.N.Y. May 9, 2022) (citing *Finkel v. Universal Elec. Corp.*, 970 F. Supp. 2d 108, 119 (E.D.N.Y. 2013); *Trs. of the Local 813 Ins. Tr. Fund v. A.A. Danzo Sanitation, Inc.*, No. 16-CV-318 (SJ) (SJB), 2018 WL 4268907, at *3–4 (E.D.N.Y. Aug. 8, 2018), *adopted by* 2018 WL 4266038 (Sept. 5, 2018)).

Similarly, allegations that an employer failed to remit contributions according to the terms of an applicable collective bargaining agreement are sufficient to establish liability for breach of that agreement under the LMRA. *See, e.g.*, *Finkel v. Allstar Elec. Corp.*, No. 11-CV-3222 (KAM)

5

(RER), 2013 WL 4806951, at *4 (E.D.N.Y. Sept. 9, 2013) ("Plaintiff has established liability under Section 301 of the LMRA because it sufficiently pleads that [defendant] failed to remit the Required Contributions in accordance with their obligations under the CBAs."); *see also Rizzo*, 2022 WL 1460585, at *4 (citing *Trs. of the Bldg. Trades Educ. Benefit. Fund v. Romero Electric LLC*, No. 19-CV-3515 (DRH) (AYS), 2021 WL 3604811, at *6 (E.D.N.Y. July 19, 2021), *adopted by* 2021 WL 3603612 (Aug. 13, 2021)) ("Allegations in a complaint that an employer breached an agreement with a union by failing to pay benefit contributions are sufficient to establish liability under the LMRA.").

Here, Plaintiffs allege that Trac was at all relevant times an employer in an industry affecting commerce, was bound by a CBA, and by extension association agreements and Trust Agreements, was obligated to make certain contributions to the Funds and to the Union and submit to an audit of its books and records under the CBA, and that it failed to comply with those obligations. (Compl. ¶¶ 18–22, 24–30, 32–34, 37–38). In the default judgment context, these allegations are sufficient to establish Trac's liability under ERISA, 29 U.S.C. § 1145, and the LMRA, 29 U.S.C. § 185(a). *See, e.g.*, *Rizzo*, 2022 WL 1460585, at *3–4 (allegations that defendant failed to remit benefit contributions and union dues to plaintiffs and failed to permit an audit of books and records are sufficient on default to establish liability under ERISA and LMRA); *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Engineers, Loc. 15, 15A, 15C & 15D, AFL-CIO v. Genrus Corp.*, No. 20-CV-4980 (MKB) (RER), 2021 WL 4755704, at *2 (E.D.N.Y. Aug. 16, 2021) (citations omitted) (noting plaintiff's allegations that employer was bound by and violated CBA "are deemed admitted" on default and therefore constitute violations of ERISA and LMRA), *adopted by* 2021 WL 3928952 (Sept. 2, 2021); *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Engineers Loc.*

6

*15, 15A, 15C & 15D, AFL-CIO by Callahan v. Midwest REM Enterprises, Inc.*, No. 20-CV-05896 (KAM), 2021 WL 2809794, at *5 (E.D.N.Y. July 6, 2021) (citing *Labarbera v. Frank J. Batchelder Transp. LLC*, No. 08-CV-3387 (SJ) (JMA), 2009 WL 240521, at 3 (E.D.N.Y. Feb. 2, 2009)) (granting default judgment where plaintiff alleged that defendant-employer and plaintiff-union were parties to a CBA, that employer failed to make contributions as required under the CBA, and that plaintiffs are fiduciaries authorized to file suit to recover delinquent contributions).

Accordingly, I respectfully recommend that the Court grant Plaintiffs' Motion for Default Judgment as to liability under ERISA and the LMRA.

II. <u>Damages and Injunctive Relief</u>

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)). Rather, a court "must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais,* 183 F.3d at 155 (citing *Transatlantic Marine,* 109 F.3d at 111). In performing such an inquiry, a court may conduct an evidentiary hearing or may forego such a hearing and rely upon detailed affidavits and documentary evidence submitted by the moving party. *See* Fed. R. Civ. P. 55(b)(2)(B)–(D) ("The court may conduct hearings . . . when, to enter or effectuate [default] judgment, it needs to: . . determine the amount of damages; establish the truth of any allegation by evidence; or investigate any other matter."); *Romanowicz,* 577 F.3d at 87 (Rule 55 "commits [the] decision" to conduct an evidentiary hearing "to the sound discretion of the district court."); *Ahuachapan Corp.*, 422 F. Supp. 3d at 662 (citing *CIT Bank, N.A. v. Dambra*, No. 14-CV-3951 (SLT) (VMS), 2015 WL 7422348, at *5 (E.D.N.Y. Sept. 25, 2015); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991)) ("Plaintiff

bears the burden of presenting proof of damages, which may take the form of documentary evidence and detailed affidavits."). "In ERISA cases seeking an award of damages after a finding of liability, Courts frequently rely solely on the affidavits, reports, and other documentary evidence submitted by plaintiffs." *Rizzo*, 2022 WL 1460585, at *4 (collecting cases); *see also Genrus*, 2021 WL 4755704, at *3 (finding plaintiffs' affidavits provide sufficient basis to determine damages to a reasonable certainty).

At this time, Plaintiffs do not seek monetary damages for unpaid or underpaid remittances; rather, they seek an order directing Defendant submit to an audit of its books and records for the time period January 22, 2018 through March 31, 2022, as required by the CBA. (Pl's Mot. at 1; Pl's Mem. at 7–8; Steinberg Aff. ¶ 8).[1] If a delinquency is found after the audit is conducted, Plaintiffs request that they be permitted to seek a damages award. (Pl's Mem. at 8–9; Steinberg Aff. ¶ 9). In addition to an order requiring that Trac submit to an audit, Plaintiffs request an award of attorney's fees and costs. (Pl's Mem. at 9–12; Steinberg Aff. ¶¶ 10, 12–16). In support of their requests for relief, Plaintiffs rely on the affidavits of their Funds Administrator, Catherine Chase (Chase Aff.), and their counsel (Steinberg Aff.).

A. <u>Injunctive Relief</u>

ERISA provides that a court may award such "legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2)(E). "Where defendant is in default and where the applicable statute provides for injunctive relief as a possible remedy, the court may issue an injunction provided that plaintiffs meet the requirements for obtaining a permanent injunction, which include a showing of 'irreparable harm should the injunction not be granted.'" *La Barbera v. Fed. Metal*

---

[1] Although the Complaint alleges non-compliance and requests an audit for the period July 1, 2017 through March 31, 2022, (Compl. ¶¶ 30–40), Trac did not execute the Local 15/Trac Agreement and become bound to the various collective bargaining agreements at issue here until January 22, 2018 (*see* Local 15/Trac Agreement; Chase Aff. ¶ 3). Accordingly Plaintiffs only seek to compel an audit beginning January 22, 2018. (Steinberg Aff. ¶ 3 n.1).

8

*& Glass Corp.*, 666 F. Supp. 2d 341, 349–50 (E.D.N.Y. 2009) (internal quotation marks omitted) (quoting *King v. Nelco Indus. Inc.*, No. 96-CV-4177, 1996 WL 629564, at *1 (E.D.N.Y. Oct. 23, 1996)). "In the ERISA context, this burden is met where the defendant defaults and refuses to submit to an audit." *Rizzo*, 2022 WL 1460585, at *5 (citing *Trs. of Pavers & Road Builders Dist. Counsel Welfare, Pension, Annuity and Apprenticeship, Skill Improvement and Safety Funds v. Genrus Corp.*, No. 18-CV-4232 (AMD) (CLP), 2019 WL 4604972, at * (E.D.N.Y. Sept. 6, 2019), *adopted by* 2019 WL 4602880 (Sept. 23, 2019)). "In such circumstances, the Court may order defendant to abide by the terms of a CBA and to 'permit and cooperate in the conduct of an audit of its records.'" *Id.* (quoting *Bricklayers Ins. & Welfare Fund v. Everest Masonry Constr.*, No. 16-CV-1622 (NG) (SMG), 2017 WL 4179853, at *5 (E.D.N.Y. June 26, 2017), *adopted by* 2017 WL 4217116 (Sept. 20, 2017). "Without an audit, plaintiffs cannot ascertain defendants monetary liability." *Id.*

Applying these standards, Plaintiffs have met their burden here. According to the Funds Administrator, Trac agreed to be bound by the CBA beginning January 22, 2018, and by extension agreed to be bound to the association agreements negotiated between the Union and the General Contractors Association of New York, Inc., and agreed to be bound by the various Trust Agreements governing the Funds. (Chase Aff. ¶ 3–4). All of the Trust Agreements provide that the Funds and CPF may audit Trac's books and records to evaluate compliance with remittance requirements. (Chase Aff. ¶ 4; Steinberg Aff. ¶ 8; Exs. D–G). Despite these agreements, however, Trac has not cooperated with Plaintiffs' request for an audit. (Chase Aff. ¶ 5).

Accordingly, I respectfully recommend that Plaintiffs' request for an Order directing Defendant to comply with an audit of its books and records for the time period January 22, 2018

9

through March 31, 2022 should be granted. Upon completion of the audit, Plaintiffs should be permitted to apply to this Court for additional relief under ERISA and the LMRA.

B. <u>Attorney's Fees and Costs</u>

Plaintiffs also request attorney's fees and costs. Under ERISA, when "a judgment in favor of the plan is awarded, the court shall award the plan reasonable attorney's fees and costs of the action, to be paid by the defendant." 29 U.S.C. § 1132(g)(2)(D). The Trust Agreements to which the parties are bound also provide for recovery of attorneys' fees and costs. (*See* Steinberg Aff. ¶ 10; Exs. D–G).

"A reasonable attorney's fee is 'what a reasonable, paying client would be willing to pay.'" *Genrus*, 2021 WL 4755704, at *5 (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009)). "A reasonable fee is calculated by multiplying a reasonable hourly rate by a reasonable number of hours expended on the tasks completed." *Id.* (citing *Pinzon v. Paul Lent Mech. Sys., Inc.*, No. 11-CV-3384 (DRH) (WDW), 2012 WL 4174725, at *5 (E.D.N.Y. Aug. 21, 2012), *adopted by* 2012 WL 4174410 (Sept. 19, 2012). "Reasonable hourly rates are determined by reference to the fees in the community in which the action is pending and to the skill and experience of the attorneys who worked on the matter." *Midwest REM Enterprises, Inc.*, 2021 WL 2809794, at *6 (citing *Luciano v. Olsten Corp.*, 109 F.3d 111, 115–16 (2d Cir. 1997)). "To determine whether the hourly rate is reasonable, courts consult the generally accepted rate in the district in which it sits." *Genrus*, 2021 WL 4755704, at *5 (citing *Div. 1181 Amalgamated Transit Union—N.Y. Employees Pension Fund v. D & A Bus Co., Inc.*, 270 F. Supp. 3d 593, 617–18 (E.D.N.Y. 2017))."Courts in this district typically award hourly rates ranging from $300 to $450 per hour for partners in ERISA cases." *Gesualdi v. Bestech Transp., LLC*, No. 14-CV-1110 (JS) (ARL), 2022 WL 866853, at *3 (E.D.N.Y. Mar. 23, 2022). "Courts assess the reasonableness of

10

hours expended depending on the nature of the case." *Genrus*, 2021 WL 4755704, at *5 (citing *Trs. of Leather Goods, Handbags, & Novelty Workers' Union Loc. 1 Joint Ret. Fund v. Cent. Fur Storage Co.*, No. 18-CV-7224 (AMD) (RER), 2019 WL 3937132, at *13 (E.D.N.Y. Aug. 2, 2019), *adopted by* 2019 WL 3936676 (Aug. 20, 2019)). The number of hours expended is unreasonable if the submitted billing records contain "excessive, redundant or otherwise unnecessary hours." *Gesualdi v. Fortunata Carting Inc.*, 5 F. Supp. 3d 262, 279 (E.D.N.Y. 2014) (quoting *Quaratino v. Tiffany & Co.,* 166 F.3d 422, 425 (2d Cir. 1999)).

Plaintiffs are represented by James M. Steinberg ("Steinberg"), a partner in the law firm Brady McGuire and Steinberg, P.C., who has been practicing in this field for more than twenty-five years. (Steinberg Aff. ¶¶ 1, 13). Steinberg seeks a total fee of $2,152.50 as compensation for 5.25 hours of work performed at an hourly rate of $410.00 per hour. (Steinberg Aff. ¶¶ 13–16). Given his status as a partner at his firm and his years of experience in litigating ERISA cases, the requested hourly rate is reasonable. *See Rizzo*, 2022 WL 1460585, at *6–7 (finding hourly rate of $410 for work performed by Steinberg to be reasonable); *Midwest REM Enters., Inc.*, 2021 WL 2809794, at *7 (finding hourly rate of $390 for work performed by Steinberg in 2020 and $400 for work performed in 2021 to be reasonable); *Genrus*, 2021 WL 4755704, at *6 (finding $390 to be a reasonable hourly rate for Steinberg in 2021); *Annuity, Pension, Welfare & Training Funds of the Int'l Union of Operating Eng'rs, Local 15, 15A, 15C & 15D, AFL-CIO v. Glassmar Steel Erectors, Inc.*, No. 20-CV-3743 (PKC) (LB), 2021 WL 4756990, at *6 (E.D.N.Y. Aug. 5, 2021) (same), *adopted by* 2021 WL 4025779 (Sept 3, 2021).

Steinberg has also submitted contemporaneous documentation of the tasks completed in connection with this matter, the hours expended on each task, and the dates that each task was performed. (Steinberg Aff. ¶¶ 14–15; *see also* ECF No. 10-10). Upon careful review of the

11

affidavit and records submitted by Steinberg, I find no excessive, redundant, or otherwise unnecessary hours. Accordingly, the 5.25 hours expended were also reasonable. *See Rizzo*, 2022 WL 1460585, at *7 (finding Steinberg reasonably billed 6.25 hours in a similar ERISA default case); *Genrus*, 2021 WL 4755704, at *6 (finding Steinberg reasonably billed 6.5 hours in a similar ERISA default case); *Annuity & Health & Welfare Funds of United Food & Commercial Workers Local 2013 v. S. Orange Fancy Food, LLC*, No. 19-CV-4192 (ARR) (RER), 2020 WL 5260540, at *5 (E.D.N.Y. Aug. 14, 2020) (same), *adopted by* 2020 WL 5259005 (Sept. 3, 2020); *Midwest REM Enterprises, Inc.*, 2021 WL 2809794, at *7 (E.D.N.Y. July 6, 2021) ("The court finds that the [7.25 hours] expended by [Steinberg] in connection with this action is reasonable in light of other similar ERISA default judgment cases").

Plaintiffs also request $522 in costs, comprised of $402 for the court's filing fee and $120 for service of process. (*See* Pl's Mot. at 1–2; Pl's Mem.at 12; ECF No. 8-1 (statement of damages). This amount is supported by Plaintiff's records, (*see* ECF No. 10-9 (service of process invoice for $120)), and the Court's docket (*see* ECF No. 1 ("filing fee $402, receipt number ANYEDC-15442961")). Therefore, I respectfully recommend that Plaintiffs be awarded $522 for litigation costs. *See Midwest REM Enterprises, Inc.*, 2021 WL 2809794, at *7 (awarding filing fee and service of process as "reasonable costs incurred in the prosecution" of a similar action); *Trs. of the Rd. Carriers Loc. 707 Pension Fund v. J.R.S. Trucking Servs., Inc.*, No. 15-CV-2444 (CBA) (RLM), 2015 WL 10487716, at *10 (E.D.N.Y. Nov. 10, 2015) (awarding filing fees and service fees because they were "plainly reasonable"), *adopted by* 2016 WL 1064518 (Mar. 15, 2016).

Accordingly, I respectfully recommend that Plaintiffs be awarded $2,152.50 in attorney's fees and $522 in costs.

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that Plaintiffs' Motion for Default Judgment be granted. Plaintiffs' request for injunctive relief should be granted and Defendant should be ordered to cooperate with an audit of its books and records for the time period of January 22, 2018 through March 31, 2022. Upon the completion of the audit, Plaintiffs should be permitted to apply for additional relief as provided for under ERISA and the LMRA. Additionally, Plaintiffs should be awarded attorney's fees of $2,152.50 and $522 in costs.

Plaintiffs' counsel is hereby directed to serve copies of this Report and Recommendation upon Defendant by regular and certified mail and to file proof of service with the Clerk of the Court. Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Eric N. Vitaliano within fourteen (14) days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

RESPECTFULLY RECOMMENDED.

**/s/ Ramon E. Reyes, Jr.**

RAMON E. REYES, JR.
United States Magistrate Judge

Dated: October 4, 2022
Brooklyn, NY